IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH J. MCCAHON, et al.,** | : CIVIL ACTION NO. 1:07-CV-0553 |
| **Plaintiffs** | : (Judge Conner) |
| v. | : |
| **PENNSYLVANIA TURNPIKE COMMISSION, et al.,** | : |
| **Defendants** | : |

**MEMORANDUM**

Presently before the court is plaintiffs' motion for a preliminary injunction. For the reasons that follow, the court will grant the motion.

**I.    Background**

Plaintiffs are employees of defendant Pennsylvania Turnpike Commission ("PTC"). They are employed in a bargaining unit represented by Turnpike and Public Employees, Teamsters Union Local No. 77, International Brotherhood of Teamsters ("the Union"). (Doc. 3 ¶ 8.) A collective bargaining agreement ("CBA") in effect from October 1, 2004 through September 30, 2007 governs the relationship between PTC and the Union. (See Doc. 3, Ex. A.) Article 4 of the CBA has a "maintenance of membership" provision stating:

> Any employee who, on the effective date of this agreement, has joined the Union or who joins the Union in the future must, as a condition of employment, remain a member for the duration of this agreement with the proviso that any such employee may resign from the Union during a period of fifteen (15) days prior to the expiration of this agreement.

(Id. art. 4 at 8-9.)[1]  The CBA also provides:

> The Employer further agrees to deduct a Fair Share Fee monthly from all employees in the bargaining unit who are not members of the Union.
>
> * * *
>
> The [PTC] shall deduct regular initiation fees and monthly dues from the pay of employees covered by this agreement and upon receipt from the Union of individual written authorization cards executed by an employee for that purpose and bearing his signature.

(Id. at 9.)

Plaintiffs submitted to the Union letters of resignation from membership. The Union received these letters and rejected the resignations because the "maintenance of membership" provision of the CBA provided a specific time for

---

[1] This "maintenance of membership" provision essentially restates language from the Pennsylvania Public Employe Relations Act:

> "Maintenance of membership" means that all employes who have joined an employe organization or who join the employe organization in the future must remain members for the duration of a collective bargaining agreement so providing with the proviso that any such employe or employes may resign from such employe organization during a period of fifteen days prior to the expiration of any such agreement.

43 PA. CONS. STAT. ANN. § 1101.301(18).  The Act also provides:

> Membership dues deductions and maintenance of membership are proper subjects of bargaining with the proviso that as to the latter, the payment of dues and assessments while members, may be the only requisite employment condition.

Id. § 1101.705.

2

resignations.[2]  The Union continues to collect full union dues from plaintiffs for unrestricted use by the Union.  The next collection of union dues will occur on June 7, 2007.[3]  (See Tr. at 28-31; see also Doc. 3, Exs. B, C.)[4]

Plaintiffs commenced the instant action on March 22, 2007 by filing a verified complaint (Doc. 1), and subsequently amended the complaint to add a plaintiff (Doc. 3).  Plaintiffs allege that the "maintenance of membership" provision of the CBA and §§ 1101.301(18) and 1101.705 of the Pennsylvania Public Employe Relations Act violate their First Amendment rights.  They also allege that the Union is in violation of the notice requirements set forth in Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292 (1986).  (Doc. 3)

On April 4, 2007, plaintiffs filed a motion for a preliminary injunction (Doc. 4) seeking to enjoin defendants from seizing union dues or fair share fees and from enforcing Article 4 of the CBA, including the "maintenance of membership" provision.  Following a telephone conference with the parties, the court established a briefing and hearing schedule.  (See Docs. 12, 15.)  The court conducted a hearing

---

[2] In rejecting plaintiffs' resignations, the Union noted it would honor resignations that complied with the CBA and applicable law.  (See Doc. 3, Ex. C.)

[3] Plaintiffs also informed PTC of their resignations and requested that the PTC refrain from collecting fair share fees.  (See Doc. 3, Ex. D.)  PTC responded that it had not received any correspondence or documentation from the Union confirming plaintiffs' resignations and, hence, that it was contractually obligated to deduct plaintiffs' dues.  (See Doc. 3, Ex. E.)

[4] The parties stipulated to these facts during the hearing held on May 24, 2007.  These facts were corroborated by the testimony of plaintiff Richard G. Lesinski.  (See Tr. at 6-29.)

on plaintiffs' motion for a preliminary injunction on May 24, 2007 and the motion is now ripe for disposition.

## II. Discussion

The requirements for preliminary injunctive relief are well settled. The moving party must establish that (1) there is a reasonable probability of success on the merits, (2) irreparable injury will result without injunctive relief, (3) granting the injunction will avoid a comparably greater injury than denying it, and (4) the injunction is in the public interest. See BP Chems., Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chamberlain, 145 F. Supp. 2d 621, 625 (M.D. Pa. 2001). While each factor need not be established beyond doubt, they must combine to show the immediate necessity of injunctive relief. See Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002); see also Walgreen Co. v. Sara Creek Prop. Co., 966 F.2d 273, 275-79 (7th Cir. 1992) (Posner, J.); 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.3 (3d ed. 1998).

### A. Reasonable Probability of Success on the Merits

To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. See Punnett v. Carter, 621 F.2d 578, 582-83 (3d Cir. 1980). Whether success is likely requires examination of the legal principles controlling the claim and potential defenses available to the opposing party. See BP Chems., 229 F.3d at 264. However, the mere possibility that the claim might be

defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of action. Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 173 (3d Cir. 2001) (citing 11A WRIGHT ET AL., supra, § 2948.3).

Although there is a dearth of case law on the issue of whether "maintenance of membership" provisions violate the First Amendment, the court finds that plaintiffs have a reasonable likelihood of success on the merits. In the context of deciding whether certain union expenses may be charged to non-members as part of their fair share fee, the Third Circuit stated that "[t]he First Amendment affords public-sector employees the freedom not to associate with a labor organization." Otto v. Pa. State Educ. Ass'n-NEA, 330 F.3d 125, 128 (3d Cir. 2003) (citing Hudson, 475 U.S. at 301); cf. Pattern Makers' League v. NLRB, 473 U.S. 95, 106 (1985) (involving a union shop agreement and the National Labor Relations Act § 8(a)(3): "Full union membership thus no longer can be a requirement of employment. . . . By allowing employees to resign from a union at any time, § 8(a)(3) protects the employee whose views come to diverge from those of his union.").

In the matter *sub judice*, the "maintenance of membership" provision locks plaintiffs into union membership for the duration of the CBA—the only way plaintiffs can resign from the union is to leave their employment. See, e.g., Debont v. City of Poway, No. 98CV0502, 1998 WL 415844 (S.D. Cal. Apr. 14, 1998) (finding that the plaintiff "has shown he is likely to succeed on his First Amendment claim" where a "maintenance of membership" provision prevented him from resigning

from the union and granting a temporary restraining order). Despite plaintiffs' apparent disagreement with the Union's ideology or politics, the "maintenance of membership" provision forces their continued membership. And the Union continues to collect full union dues from plaintiffs. These dues are in excess of the fair share fee paid by non-members and can be used by the Union for *any* purpose. See Otto, 330 F.3d at 128 ("But a union may not, consistent with the First Amendment, collect fair-share dues [from non-members] to support ideological causes or other expenses insufficiently related to collective bargaining."). As union members, plaintiffs are also subject to discipline under the CBA. For example, plaintiffs were fined for crossing the picket line during a seven-day strike. (See Tr. at 18-19; Doc. 22 at 3.)[5] Thus, the "maintenance of membership" provision may have a direct and deleterious impact on plaintiffs' rights under the First Amendment. Although Otto and other similar cases involve *non*-members' First Amendment right not to associate, the court finds that plaintiffs are reasonably likely to succeed in extending this right to union members who are unable to resign unilaterally because of a "maintenance of membership" provision.

**B.**     **Irreparable Injury**

Irreparable injury is harm of such an irreversible character that prospective judgment following trial would be inadequate to make the moving party whole. See

---

[5] The court notes that plaintiffs did not attempt to resign from Union membership until after they were fined for crossing the picket line. (See Doc. 22 at 3.)

Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).  The mere risk of injury is not sufficient to meet this standard.  Rather, the moving party must establish that the harm is imminent and probable.  Id.; 11A WRIGHT ET AL., supra, § 2948.1.  Harm that may be contained effectively only through immediate injunctive relief is properly deemed "irreparable."  Instant Air Freight, 882 F.2d at 801.  In the context of First Amendment claims, plaintiffs satisfying the "likelihood of success on the merits" prong are not  "entitled to preliminary injunctive relief unless they [can] show a 'real or immediate' danger to their rights 'in the near future.'"  Conchatta, Inc. v. Evanko, 83 F. App'x 437, 442 (3d Cir. 2003) (quoting Anderson v. Davila, 125 F.3d 148, 164 (3d Cir. 1997)).

In the matter *sub judice*, defendants rely on Hohe v. Casey, 868 F.2d 69 (3d Cir. 1989), for the proposition that the harm in the instant matter is not irreparable.  Id. at 73 ("In this case the alleged impingement of the Union's fair share collection procedures on the plaintiffs' First Amendment rights simply fails to rise to that level of constitutional deprivation sufficient to show the irreparable harm necessary for the issuance of a preliminary injunction . . . .").  Their reliance is misplaced.  The harm in Hohe involved only the fair share fee for *non*-members.  See id.  In the instant action, the harm involves full union dues *and* plaintiffs' continued association with the union, including susceptibility to union discipline.  Plaintiffs have demonstrated a "real or immediate danger" to their First Amendment right not to associate because the Union informed them that they cannot resign their

membership until the window of time provided by the "maintenance of membership" provision.  (See Doc. 3, Ex. C.)  Defendants' offer to escrow the difference between the full union dues and the fair share fee does not address the non-financial aspects of the harm.  Accordingly, the court finds that plaintiffs have met the irreparable injury requirement for preliminary injunctive relief.

### C. Balancing of Hardships

Whether granting injunctive relief would result in greater harm than denying relief requires an examination of the terms of the proposed injunction, the respective positions of the parties, and some well-educated speculation on the possible effects of the injunction.  See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 596-97 (3d Cir. 2002); Pittsburgh Newspaper Printing Pressmen's Union No. 9 v. Pittsburgh Press Co., 479 F.2d 607, 609-10 (3d Cir. 1973).  If the potential harms to others exceed the potential benefits to the moving party, injunctive relief should generally be denied.  See Novartis Consumer Health, 290 F.3d at 596-97.  Essentially, the question is whether the injunction would do more harm than good.

In their memoranda of law, defendants did not specifically address this issue.  However, during the hearing, defendants argued that the Pennsylvania Employe Relations Act, authorizing "maintenance of membership" contractual language, was written with a purpose of creating labor peace and stability for the duration of the CBA.  (See Tr. at 58-59.)  This general, *potential* harm clearly does not outweigh

the irreparable harm to plaintiffs' First Amendment rights. Accordingly, the balancing of the hardships weighs in favor of preliminary injunctive relief.

### D. Public Interest

Among the more nebulous concepts of equitable relief is the public interest factor of injunction analysis. 11A WRIGHT ET AL., supra, § 2948.4. This factor requires the court to look beyond the parties' respective interests and to gauge the injunction's potential effects on the community as a whole. See Novartis Consumer Health, 290 F.3d at 596-97. In the matter *sub judice*, the court finds that the public interest is served by the issuance of injunctive relief. Beyond generalities, defendants offer no basis for the court to conclude that labor peace and stability will be adversely affected by preliminary injunctive relief. Without such a basis, the public interest is clearly served by protecting plaintiffs' First Amendment rights. See Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 883-84 (3d Cir. 1997) ("In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights.").

### E. Security

Federal Rule of Civil Procedure 65 mandates as a prerequisite to granting temporary injunctive relief the "giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The Third Circuit has recognized an exception to this requirement in noncommercial cases, stating that "the court should consider

9

the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." Elliott v. Kiesewetter, 98 F.3d 47, 59 (3d Cir. 1996). Citing Elliott, plaintiffs argue that no bond should be required in this matter. Although defendants may not face significant losses as a result of preliminary injunctive relief, plaintiffs offer no evidence of their inability to post a bond. Without such evidence, the court cannot balance the potential hardships. See id. at 60 (reversing the district court's waiver of the security bond because the court did not make findings regarding the moving parties' ability to post the bond, and remanding the case for the court to balance the potential hardships). Therefore, the court will require plaintiffs to post a minimal bond.

**III.   Conclusion**

The court finds that preliminary injunctive relief is warranted. Plaintiffs are reasonably likely to succeed on the merits of their case and face irreparable injury without such relief. Likewise, the balancing of the hardships weighs in plaintiffs' favor and injunctive relief is in the public interest. Accordingly, the court will grant preliminary injunctive relief, conditioned upon plaintiffs' posting of $5,000.00 bond with the court.

An appropriate order will issue.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        June 4, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH J. MCCAHON, et al.,** | : | CIVIL ACTION NO. 1:07-CV-0553 |
| **Plaintiffs** | : | (Judge Conner) |
| v. | : | |
| **PENNSYLVANIA TURNPIKE COMMISSION, et al.,** | : | |
| **Defendants** | : | |

### ORDER

AND NOW, this 4th day of June, 2007, upon consideration of plaintiffs' motion for a preliminary injunction (Doc. 4), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for a preliminary injunction (Doc. 4) is GRANTED conditioned upon the posting of a bond or appropriate security in the amount of $5,000.00 with the Clerk of Court.

2. Upon the posting of said bond or security, defendants are preliminarily ENJOINED from:

    a. Seizing any union dues from plaintiffs' wages.

    b. Disciplining plaintiffs under the collective bargaining agreement between Turnpike and Public Employees, Teamsters Union Local No. 77, International Brotherhood of Teamsters and the Pennsylvania Turnpike Commission.

3. Nothing in this order shall preclude defendants from collecting a fair share fee from plaintiffs, provided, however, that the procedure for collection complies with applicable law. See Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292 (1986); Robinson v. Pa. State Corr. Officers Ass'n, 363 F. Supp. 2d 751 (M.D. Pa. 2005).

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge